UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA R. IBARRA,

Plaintiff,

v. Case No. 8:25-cv-01845-KKM-AEP

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Because the Administrative Law Judge's ("ALJ") decision was not supported by substantial evidence and failed to apply proper legal standards, it is recommended that the Commissioner's decision be reversed and remanded.

**I.**

**A. Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 403–22). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 212–61). Plaintiff then requested an administrative hearing (Tr. 262–63). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 73–106). The ALJ then held a supplemental hearing (Tr. 58–72). Following the hearings, the ALJ issued an

unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 172–95). The Appeals Council remanded the case to the ALJ for a new hearing (Tr. 196–201). The ALJ held another hearing and issued a second unfavorable decision finding Plaintiff not disabled (Tr. 14–57). Subsequently, Plaintiff requested review by the Appeals Council, which denied the request (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B. Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1986, claimed disability beginning August 11, 2018 (Tr. 412). Plaintiff obtained a ninth-grade education (Tr. 473). Plaintiff has no past relevant work (Tr. 29). Plaintiff alleged disability due to hypothyroidism, anxiety, depression, high cholesterol, low blood pressure, and migraines (Tr. 472).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022, and had not engaged in substantial gainful activity since August 11, 2018, the alleged onset date (Tr. 19). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: right shoulder derangement; migraine or tension-type headaches; obesity; depressive disorder; anxiety disorder; somatic symptom disorder; and trauma- and stressor-related disorder (Tr. 20). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 20 pounds occasionally, 10 pounds frequently; stand/walk 6 out of 8 hours; sit 6 out of 8 hours; frequently stoop, kneel, crouch, crawl, and climb ramps and stairs; never balance or climb ladders, ropes or scaffolds; reaching with the right upper extremity is limited to frequent; handling and fingering with both upper extremities is limited to frequent; she should avoid concentrated exposure to extreme cold and to vibration; is limited to a moderate noise environment; and she can understand, remember, and carry out simple instructions; have occasional interaction with the public, coworkers and supervisors; deal with occasional changes in a routine work environment; and perform tasks that do not require a specific production rate pace or an hourly production quota (e.g., no assembly line work).

(Tr. 22). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 29).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff had no past relevant work (Tr. 29). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a marker, mail clerk, or garment sorter (Tr. 30). Accordingly, based on Plaintiff's age, education,

work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 30).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning they must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his

or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required by their prior work, step five of the evaluation requires the ALJ to decide whether the claimant can do other work in the national economy, given their age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides a plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply when an individual's medical condition is severe enough to prevent them from returning to their former employment, but not to engage in other substantial gainful activity. In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules appended to the regulations and commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, it gives no deference to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning to determine that the proper legal analysis has been conducted mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

**III.**

Plaintiff argues that the ALJ erred by failing to consider the mental impairment of somatic symptom disorder when assessing the physical limitations of Plaintiff's RFC, improperly assessing Dr. Eastridge's opinion, and failing to consider the consistency of the psychological opinions. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

**A. The ALJ's Evaluation of Plaintiff's Somatic Symptom Disorder**

Plaintiff argues that the ALJ erred by failing to consider the mental impairment of somatic symptom disorder when assessing the physical limitations of Plaintiff's RFC. Defendant responds that the ALJ properly considered all of Plaintiff's mental impairments in the RFC and argues that Plaintiff is asking the Court to reweigh the evidence. Plaintiff replies that she is not asking the Court to reweigh the evidence, but simply to "require the ALJ to assess the severe somatic symptom disorder according to the symptoms caused by that impairment" (Doc. 17, at 2). The undersigned agrees that the ALJ erred and accordingly recommends reversal for the following reasons.

The evaluation of a claimant's subjective complaints of pain and other symptoms is governed by the Eleventh Circuit's "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the

condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)). In determining the extent to which symptoms, such as pain, affect a claimant's ability to perform basic work activities, ALJs consider a claimant's statements about the intensity, persistence, and limiting effects of their symptoms in relation to the objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Factors relevant to a claimant's symptoms include the following: daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken; treatment, other than medication, received for relief of pain or other symptoms; any other measures used to relieve pain; and other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* §§ 404.1529(c)(3)(i)–(vii). If the ALJ discredits a claimant's subjective symptom complaints, they "must articulate explicit and adequate reasons" for doing so. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). When a court reviews an ALJ's decision to discredit such testimony, "the question is not . . . whether [the] ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ discussed Plaintiff's pain and related symptoms, noting that Plaintiff purports to have "joint pain due to hypothyroidism," "pain in her hip, knees, and hands daily," "headaches 2-3 times a month," and many other physical

symptoms (Tr. 23). The ALJ then discussed medical evidence of record that, in many cases, conflicts with Plaintiff's subjective symptom complaints. Plaintiff now argues that the ALJ erred by failing to consider Plaintiff's somatic symptom disorder when assessing Plaintiff's physical symptoms. To better understand Plaintiff's argument, some background regarding somatic symptom disorder is useful.

The relevant regulations describe somatic symptom and related disorders as follows:

> These disorders are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience. These disorders may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 B.6.a. "Sometimes known as somatization disorder or somatic symptom disorder, somatoform disorder is a mental ailment which is characterized by 'the presence of physical symptoms that suggest a general medical condition [but that] are not fully explained by a general medical condition.'" *Tremblay v. Kijakazi*, No. 8:20-CV-2479-CPT, 2022 WL 16757666, at *4 (M.D. Fla. Nov. 8, 2022) (quoting *Hebermehl v. Astrue*, No. 507-CV-361-OC-GRJ, 2008 WL 4405049, at *7 n.32 (M.D. Fla. Sept. 26, 2008)). "In short, somatoform disorder is a mental impairment that causes 'physical distress of [a]

psychological origin.'" *Id.* (quoting *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)).

At step two of the sequential evaluation process, the ALJ found that Plaintiff had several severe impairments, including somatic symptom disorder (Tr. 20). Beyond the step two finding and a brief reference to Dr. Eastridge diagnosing Plaintiff with somatic symptom disorder (Tr. 20), the impairment is not further discussed in the ALJ's decision. Thus, it is unclear whether and to what extent the ALJ considered Plaintiff's somatic symptom disorder in determining Plaintiff's complaints were not entirely credible. This Court has reversed the Commissioner's decision on similar grounds. *See, e.g.*, *Tremblay*, 2022 WL 16757666, at *5 (finding that the ALJ's failure to discuss Plaintiff's somatic symptom disorder in his evaluation of Plaintiff's subjective symptom complaints was reversible error and collecting other cases reaching the same conclusion). Other courts have done the same. *See, e.g.*, *Katie E. B. v. Kijakazi*, No. 20CV2354-MDD, 2022 WL 4595062, at *4 (S.D. Cal. Sept. 30, 2022) ("[T]he ALJ did not discuss somatic symptom disorder as an alternative explanation for contradictions between Plaintiff's subjective symptom testimony and the objective medical evidence."); *Miller v. Kijakazi*, No. SA-22-CV-00406-ESC, 2023 WL 2583939, at *4 (W.D. Tex. Mar. 20, 2023) ("Although the ALJ listed somatic symptom disorder as a diagnosis . . . in generally reciting the medical evidence, there is no indication that the ALJ in fact considered the effects of this disorder in evaluating [Plaintiff's] credibility or in fashioning the RFC. Given that [Plaintiff's] somatic symptom disorder provides a possible

explanation for the identified discrepancy between the physical degeneration documented in his records and the degree of [their] described pain, this was error."). Accordingly, the undersigned recommends reversal and remand to the Commissioner to consider Plaintiff's somatic symptom disorder in the ALJ's evaluation of Plaintiff's subjective symptom complaints.

**B. The ALJ's Evaluation of Dr. Eastridge's Opinion**

Next, Plaintiff argues that the ALJ erred in her assessment of Dr. Eastridge's opinion. Specifically, Plaintiff argues that the ALJ's reasons for finding Dr. Eastridge's opinion unpersuasive are contrary to the regulations. The ALJ found Dr. Eastridge's opinion unpersuasive because Plaintiff's attorney referred Plaintiff to Dr. Eastridge, the ALJ disagreed with Dr. Eastridge's use of the phrase "testing," and Dr. Eastridge opined that Plaintiff could do more than she believed she could do. Defendant argues that the ALJ properly assessed Dr. Eastridge's opinion and articulated substantial evidence to support her finding that the opinion was unpersuasive.

Dr. Eastridge assessed Plaintiff in July 2022 on referral by Plaintiff's attorney (Tr. 20, 27). Dr. Eastridge reviewed Plaintiff's medical records and administered the "Pain Patient Profile (P-3), Symptom Checklist 90-Revised (SCLR90), and the World Health Organization Disability Assessment Schedule 2.0 (WHODAS-2)" (Tr. 1416). Dr. Eastridge then diagnosed Plaintiff with PTSD, Generalized Anxiety Disorder, and Somatic Symptom Disorder and opined on her disability based only

on her mental impairments, noting that he "would rate her impairment to be less severe than her own ratings" (Tr. 1417–18).

When considering medical opinions, adjudicators do not defer to any medical opinion or prior administrative findings. 20 C.F.R. § 404.1520c(a). Rather, ALJs evaluate the persuasiveness of the medical opinion using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* §§ 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors, and the ALJ must explain how they were considered in the determination or decision. *Id.* § 404.1520c(b)(2). "Supportability" refers to the relevance of the objective medical evidence and supporting explanations offered by a medical source in support of their opinions. *Id.* § 404.1520c(c)(1). "Consistency" refers to how consistent the statement is with the evidence from other medical and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

First, the ALJ properly evaluated the supportability of Dr. Eastridge's opinion and his relationship to the claimant. The ALJ opined that Dr. Eastridge's opinion is "not supported by objective findings," describing Dr. Eastridge's "unusually limited mental status exam" of Plaintiff that did not provide enough evidence to support his findings (Tr. 27). Specifically, the ALJ found that Dr. Eastridge's opinion that Plaintiff had mild impairments in her ability to remember or apply information unsupported because he did not perform any test of memory or intelligence. Additionally, the ALJ noted that Dr. Eastridge opined that Plaintiff would have moderate impairment in her ability to interact with others;

concentration, persistence, and pace of work; and ability to adapt and manage herself, citing only to her "becoming very frustrated and tired by the time she finished responding to lengthy questionnaires in a reasonable pace/time frame" (Tr. 27). As for the relationship to the claimant factor, the ALJ notes that Plaintiff was referred to Dr. Eastridge by her attorney solely to assess her disability (Tr. 27). Although this is not a valid basis on its own to find Dr. Eastridge's opinion unpersuasive, his relationship to the claimant is nevertheless a relevant factor under the regulations. *See* 20 C.F.R. § 404.1520c(c)(3). Because Plaintiff raises the ALJ's alleged failure to evaluate the consistency factor as a separate argument, the undersigned addresses consistency below.

**C. The ALJ's Evaluation of the Consistency of the Psychological Opinions**

Plaintiff finally argues that the ALJ failed to consider the consistency factor for Dr. Eastridge's opinion and the medical opinion of Dr. Otero-Suria. Plaintiff asserts that the ALJ should have compared the two opinions with one another for consistency and evaluated the opinions' consistency with other record evidence, including the three prior administrative medical findings in the record. Defendant argues that the ALJ's opinion adequately applied the consistency factor to both opinions and is, therefore, supported by substantial evidence.

Again, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). An ALJ is

required to explain how they considered the consistency of a medical opinion with other record evidence.

Turning first to the ALJ's evaluation of Dr. Eastridge's opinion, the ALJ fails to adequately articulate how they considered the consistency factor. The paragraph of analysis of Dr. Eastridge's opinion never once compares the opinion to other record evidence, and even the ALJ's conclusion that "Dr. Eastridge's opinions are not supported by objective findings and are therefore not persuasive" does not invoke the consistency factor. This is reversible error.

As for the ALJ's evaluation of Dr. Otero-Suria's opinion, the ALJ did adequately articulate how they considered the consistency factor. The ALJ explained that Dr. Otero-Suria's opinion that Plaintiff had moderate or marked limitations in several work-related areas was not supported by "the claimant's history of no mental health treatment, no counseling or therapy, only a medication prescribed for depression by primary care, and no difficulties reported in her ability to raise four children independently" (Tr. 28). The ALJ also referenced the inconsistency between Dr. Otero-Suria's opinion and Plaintiff's "normal mental health status exams in the treatment record, and nothing except Celexa 20 mg prescribed as treatment" (Tr. 28). Due to these inconsistencies with other record evidence and lack of support from Dr. Otero-Suria's own findings, the ALJ found the opinion "not persuasive for more than moderate limitations due to mental impairments" (Tr. 28). Because she compared the opinion with other medical and

nonmedical evidence in the record, the ALJ properly considered the consistency factor with respect to Dr. Otero-Suria's opinion.

## IV.

In conclusion, the undersigned finds that the ALJ erred by failing to consider Plaintiff's somatic symptom disorder in her evaluation of Plaintiff's subjective symptom complaints and by failing to explain how she considered the consistency factor with respect to Dr. Eastridge's opinion. Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be reversed and remanded.
2. The Clerk be directed to enter final judgment in favor of the Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 24th day of July 2026.

ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc: Hon. Kathryn Kimball Mizelle
Counsel of Record